11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Cecil
Keith Hayes                                                   

Appellant

Vs.                   No. 11-02-00348-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury found appellant guilty of aggravated robbery
and sentenced him to confinement for a term of 70 years and assessed a $10,000
fine.  Appellant raises five points of
error on appeal.  We affirm.

Appellant’s conviction arises from a robbery
occurring outside of a coin-operated laundry 
on October 7, 2001.  The victim,
a high school student, was approached by a man as she stood outside of the
laundry.  The man grabbed her arm and
stuck a gun in her side.  He ordered her
to go into an adjacent alley.  He then
ordered her to give him the keys to her car. 
When the victim denied that the keys were in her possession, the man
pointed the gun at her head and ordered her to give him all of her money.  After the victim handed the robber eight
dollars in quarters, the robber forcibly stuck his tongue in the victim’s mouth
and then fled.  The victim identified
appellant as the robber both in a photographic lineup and at trial.  The sufficiency of the evidence is not
challenged.








In his first point,
appellant, an African-American, argues that the trial court erred in overruling
his Batson[1] objections
to the State’s peremptory challenges to all African-American
veniremembers.  Appellant contends that
the State’s challenges to these veniremembers were racially motivated.  The use of peremptory challenges to exclude
persons from the petit jury because of race violates the equal protection
clause of the 14th Amendment to the U.S. Constitution.  Batson v. Kentucky, supra; Ladd v.
State, 3 S.W.3d 547, 563 (Tex.Cr.App.1999), cert. den’d, 529 U.S.
1070 (2000). The party objecting under Batson must make a prima facie
showing of discriminatory motives.  If
the objecting party makes a prima facie showing, then the burden shifts to the
other party to come forward with a race-neutral explanation.  The objecting party may rebut the
race-neutral explanation.  The trial
court must then decide whether the objecting party has proven purposeful
discrimination.  Because the trial court’s
decision frequently turns on an evaluation of credibility, we give the trial
court’s decision great deference and will not disturb it unless it is clearly
erroneous.  Herron v. State, 86
S.W.3d 621, 630 (Tex.Cr.App.2002).

The State offered
the following race-neutral explanations and reasons for striking the
veniremembers:

(1) Veniremember
No. 6.  The veniremember was asleep for
a large portion of the voir dire proceedings. 
The veniremember appeared to be 
“extremely grandmotherly,” did not respond to questions, and did not
appear to understand the proceedings. 

 

(2)
Veniremember No. 11.  The veniremember
gave conflicting answers in response to questions.  The veniremember had trouble staying awake.  A relative of the veniremember is currently in prison, and the veniremember believed
that rehabilitation was the primary purpose of punishment.  

 

(3) Veniremember
No. 15.  The veniremember did not
respond to the judge=s questions. 
The veniremember had a bad veniremember rating in a previous case.   The veniremember displayed hostile body
language to the prosecutor.  The veniremember also believed that rehabilitation was the primary
purpose of punishment.  

 

(4) Veniremember
No. 16.  The veniremember gave inconsistent answers.  The veniremember
also believed that rehabilitation was the
primary purpose of punishment.  A
relative of the veniremember
was awaiting prosecution in a pending
case.   

 

(5) Veniremember
No. 22.  The veniremember gave false answers about his own criminal record, and
the veniremember
also believed that rehabilitation was the
primary purpose of punishment.   

 

(6)
Veniremember No. 26.  The veniremember
was curt in her answers to the prosecutor=s questions. 
The veniremember=s nephew was serving a
40-year sentence for robbery, and the veniremember also believed that
rehabilitation was the primary purpose of punishment.  

 








(7) Veniremember
No. 35.  The veniremember gave
inconsistent answers and would require the State to present the testimony of
more than one witness in order to obtain a conviction.  The veniremember was
unemployed. 

 

(8) Veniremember No.
46.[2]   The veniremember gave
inconsistent answers.  The veniremember also had friends or family members that had been
arrested, charged, or convicted.  

 

Appellant responded
to the reasons given by the State by arguing that prosecutors asked incomplete questions
during voir dire as a tool to produce inconsistent responses which could serve
as reasons for striking veniremembers. 
Appellant also disputed the State=s
contentions that some of the veniremembers were sleeping.  Appellant further asserted that some of the
veniremembers which the State did not strike also indicated that they believed
rehabilitation was the primary purpose of punishment.  

The trial court
made detailed findings on the record regarding the State=s peremptory challenges and the State=s reasons.  The
trial court determined that the State did not question the veniremembers in an
unfair manner as argued by appellant. 
With respect to Veniremember Nos. 11, 16, 35, and 46, the trial court
agreed with the State=s assertion that these veniremembers gave inconsistent
answers.  The trial court also found
that Veniremember No. 22 did not disclose his criminal background when asked to
do so.[3]  With respect to Veniremember No. 15, the
trial court accepted the State=s perception of
hostility from the veniremember as a race-neutral explanation.  The trial court also agreed with the State=s contention that the manner in which Veniremember No.
26 responded to the State=s questions indicated hostility.  The trial court disallowed the State=s peremptory challenge to Veniremember No. 6, thereby
permitting Veniremember No. 6 to serve on the jury. 








The reasons given
by the prosecutor were race-neutral. See Adanandus v. State, 866 S.W.2d
210, 224-25 (Tex.Cr.App.1993), cert. den’d, 510 U.S. 1215
(1994)(rehabilitation is a primary goal for punishment); Earhart v. State,
823 S.W.2d 607 (Tex.Cr.App.1991)(unemployment); Dorsey v. State, 940
S.W.2d 169, 175 (Tex.App. B Dallas 1996, pet’n ref’d)(sleeping,
inattentiveness, relatives who have been convicted or charged with a criminal
offense); Ivatury v. State, 792 S.W.2d 845, 848 (Tex.App. - Dallas 1990,
pet’n ref’d)(sleeping during voir dire); Anderson v. State, 758 S.W.2d
676, 680 (Tex.App. - Fort Worth 1988, pet’n ref’d)(trouble with the law); Chambers
v. State, 724 S.W.2d 440, 442 (Tex.App. - Houston [14th Dist.] 1987, pet’n
ref’d)(body language).

Appellant argues in
his brief that the prosecutor engaged in disparate treatment of the minority
veniremembers.   The record reveals that
the trial court conducted an extensive review of the reasons offered by the
State for striking the minority veniremembers. 
This review required the trial court to make an evaluation of the
prosecutor’s credibility and its own observation of the veniremembers.  The trial court’s ruling was not clearly
erroneous. Appellant’s first point of error is overruled. See Pondexter v.
State, 942 S.W.2d 577 (Tex.Cr.App.1996), cert. den’d, 552 U.S. 825
(1997).








Appellant argues in
his second point of error that the trial court erred in denying his motion to
suppress the admission of two written confessions.[4]   We have recently considered another appeal
brought by appellant from a conviction for aggravated robbery.  Hayes v. State,  No. 11-02-00244-CR, 2003 WL 2010949 (Tex.App.
B Eastland 2003, pet’n filed)(not designated for publication) (hereinafter
referred to as Cause No. 11-02-00244-CR). 
Appellant’s contention under his second point of error in this appeal is
factually identical to an issue addressed in Cause No. 11-02-00244-CR.  Appellant appealed the trial court’s refusal
to suppress three written confessions 
in Cause No. 11-02-00244-CR.  The
two written confessions at issue in this appeal were also considered in Cause
No. 11-02-00244-CR.  The trial court in
this appeal did not conduct a hearing on appellant’s motion to suppress.  Instead, the parties submitted the
reporter’s record from the suppression hearing conducted in Cause No.
11-02-00244-CR.  The trial court simply
accepted the rulings made in the underlying trial of Cause No. 11-02-00244-CR
without receiving any additional evidence or argument of counsel.  Accordingly, appellant’s second point of
error in this appeal involves two of the same written confessions and the same
appellate record that were considered in Cause No. 11-02-00244-CR.

Appellant urges
that his two written confessions were involuntary because the detectives did
not honor his request for an attorney and because the detectives promised not
to file all the cases they had against appellant if he would cooperate with
them.  When an accused requests counsel,
all interrogations must cease unless an attorney is present. Miranda v.
Arizona, 384 U.S. 436 (1966). Also, certain promises made to an accused by
persons in authority that would likely influence the accused to speak
untruthfully can render a confession involuntary. See Janecka v. State,
937 S.W.2d 456, 466 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 825 (1997).
At a suppression hearing, the trial court is the trier of fact and assesses the
witnesses’ credibility and the weight to be given to their testimony. We afford
almost total deference to a trial court’s findings of historical fact that are
supported by the evidence.  Herron v.
State, supra at 627. Furthermore, we defer to a trial court’s application
of law to fact rulings if they turn on an evaluation of credibility and
demeanor.  Guzman v. State, 955
S.W.2d 85, 89 (Tex.Cr.App.1997).








At the pretrial
suppression hearing, the State presented the testimony of police officers William
Ellstrom, Walter Hughey, and David Westfallen. Appellant testified that he
requested an attorney and that he was told that other cases would not be filed
against him if he cooperated with the officers and helped them clear the books.
The officers refuted appellant’s testimony. The trial court made oral findings
and conclusions in the record. The trial court found beyond a reasonable doubt
that appellant never asked for an attorney or never asked to terminate the
interview. The trial court found that, after being advised of his rights,
appellant intelligently, knowingly, and voluntarily waived those rights. The
court expressly found that no promises were made and no agreements were made
not to file other cases in exchange for appellant’s statements. The findings of
the trial court are supported by the record; therefore, the trial court acted
within its discretion in holding that the confessions were admissible.
Appellant’s second point of error is overruled.  Villarreal v. State, 935 S.W.2d 134, 138 (Tex.Cr.App.1996).

Appellant’s third
point of error addresses the admission of impeachment evidence.  Appellant testified in his own behalf during
the guilt/innocence phase of the trial. 
Trial counsel asked appellant during direct examination if appellant recalled
either his whereabouts or activities on the date of the alleged offense.  Appellant testified that he did not have any
specific recollection.  At the
conclusion of appellant’s direct examination, the prosecutor informed the trial
court outside the presence of the jury of the State’s desire to cross-examine
appellant about his testimony in the underlying trial of Case No.
11-02-00244-CR.  The State sought to
impeach appellant’s failure to recall any activities with his prior testimony
where he admitted attempting to rob another victim with a gun on the same date.[5]  Appellant lodged the following objection to
the State’s intent to impeach appellant: 

Well, I would object to the State being able to go
into the robbery of [the other victim] on October 7th as a way of impeaching
[appellant] when he says he doesn’t remember anything specific about October
7th.  

 

The trial court overruled this
objection.[6]








Appellant sought to
deny the charge brought against him by creating the impression during his
direct examination that he did not recall any of his activities on the date of
the alleged offense.  The State is
permitted to correct a “false impression” elicited on direct examination by the
defense.  See Wheeler v. State,
67 S.W.3d 879, 885 (Tex.Cr.App.2002); Saglimbeni v. State, 100 S.W.3d
429, 433-34 (Tex.App. B San Antonio 2002, pet’n ref’d).  This rule of correction extends to
collateral matters to which the witness has voluntarily testified. Lopez v.
State, 928 S.W.2d 528, 531 (Tex.Cr.App.1996); Poole v. State, 974
S.W.2d 892, 905 (Tex.App. ‑ Austin 1998, pet’n ref’d).  The State may use extraneous offense
evidence to correct the false impression if the evidence tends to correct the
false impression.  Wheeler v. State,
supra at 885; Saglimbeni v. State, supra at 433-34 (“In most false
impression cases, the general rule is that ‘[w]here a false picture is
presented by the defense, the prosecution may impeach the defense witnesses’
testimony by introduction of extraneous offenses.’”) The trial court did not
err in permitting the State to cross-examine appellant about the incident
involving the other victim occurring on October 7, 2001, when appellant
voluntarily testified that he could not recall his activities on that date.  Appellant’s third point of error is
overruled.  

Appellant’s fourth
point of error attacks the trial court’s admission of appellant’s “book-in”
photographs.  Appellant objected to the
admission of the photographs solely on the basis that they were “not material
in any respect.”  He additionally
alleges on appeal that the admission of the 
photographs caused unfair prejudice. 


The record reveals
a difference between the description given by the victim of her assailant and
appellant’s appearance at trial. 
TEX.R.EVID. 401 provides that evidence is relevant if it has any
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.  The book-in
photographs were, therefore, relevant to the issue of the victim’s
identification of appellant.  Moreover,
the admission of the photographs did not cause unfair prejudice.  See TEX.R.EVID. 403.  The book-in photographs consisted of a
front-view and side-view image of appellant’s head from the neck up.  The images are very similar to the
photograph of appellant contained in the photo lineup provided to the victim, a
copy of which was admitted into evidence without objection.  The fact that the book-in photographs were
associated with appellant’s arrest was of little consequence given the fact
that the jury was well aware that appellant had been arrested for the offense
for which he was being tried.  
Appellant’s fourth point of error is overruled.








As was the case
with appellant’s second point of error, his fifth point of error concerns
the  identical issue and the same
appellate record considered in Cause No. 11-02-00244-CR.  Appellant complains that the trial court
erred at the punishment stage of the trial by admitting the testimony of Terri
Coplin.  Appellant contends that an
extraneous offense was not proved beyond a reasonable doubt. Specifically,
appellant cites Harrell v. State, 884 S.W.2d 154, 160 (Tex.Cr.App.1994),
and argues that the trial court erred in its initial determination that a jury
could reasonably find beyond a reasonable doubt that appellant committed the
extraneous offense against Coplin. The court in Mitchell v. State, 931
S.W.2d 950, 953 (Tex.Cr.App.1996), held that a trial court’s threshold determination
of admissibility under TEX. CODE CRIM. PRO. ANN. art. 37.07, § 3(a) (Vernon
Supp. 2003) is based on relevancy, not on reasonable doubt determination, and
is reviewed by this court under an abuse of discretion standard. The court
stated:

Consequently, we find that the trial court is deemed
the authority on the threshold issue of admissibility of relevant evidence
during the punishment phase of a trial, while the jury, as the “exclusive judge
of the facts,” i.e. finder of fact, determines whether or not the burden of
proof for those offenses presented has been satisfied by the party offering the
evidence.

 

At the hearing to
determine the admissibility of several extraneous offenses, on direct
examination, Coplin identified appellant as the person who had robbed her while
she was in her car. On cross-examination, Coplin admitted that she could not
”absolutely positively” say that appellant was the man who robbed her. Coplin
stated that she did not get a good look at the man, but that “[i]t just [felt] like
him.”  She stated that appellant looked
“familiar” to her and that she felt “like he certainly could be the man that
robbed” her.  Although not unequivocal,
Coplin’s identification testimony made it 
“more probable” that appellant was the robber; and, thus, the evidence
was relevant.  See Rule 401. The
trial court instructed the jury not to consider the extraneous offenses unless
the jury found that the State proved them beyond a reasonable doubt. The trial
court’s decision to admit the evidence was not an abuse of discretion.
Appellant’s final point of error is overruled.

The judgment of the
trial court is affirmed.

 

W. G. ARNOT,
III

CHIEF JUSTICE

 

September 4, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: 
Arnot, C.J., and

Wright, J., and McCall, J.











     [1]Batson v. Kentucky, 476 U.S. 79 (1986).





     [2]The State offered an explanation for striking
Veniremember No. 46.  The trial court
noted on the record that this strike was immaterial because Veniremember No. 46
would not have been reached in the jury selection process.  





     [3]Appellant does not challenge the State=s contention that Veniremember No. 22 had a criminal
record.





     [4]Appellant gave the first confession at 8:10 a.m. on
November 7, 2001.  He stated as follows
in the first confession:  AI Cecil Hayes took money from a lady in Garland as she
was leaving a laundry mat.@  He gave the
second confession at 11:30 a.m. on November 7, 2001.  He stated as follows in the second confession:

 

I approached a lady at a laundry mat and asked her To
Give me a Jump start.  She let me in her
car when I ask her for her money she was very afraid I assured her that I would
not hurt her she gave me her money with was $10 Dollar in quarters I ask her
how she would finish Drying her clothes she said she didn=t know I gaver $2 in quarters back Gave her a hug and
left her car.  





     [5]Appellant did not specifically testify in the prior
proceeding that he robbed the other victim on October 7, 2001.  However, the other victim testified that the
incident occurred on October 7, 2001, and appellant admitted that the victim=s account of the events were accurate.  





     [6]Appellant did not object to the manner in which the
State subsequently cross-examined him about his prior testimony.